IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA GRAUDINS | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| KOP KILT, LLC, | : | NO. 14-2589 |
| *d/b/a THE TILTED KILT PUB*, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                    **FEBRUARY  24 , 2017**

Presently before the Court is Plaintiff's Motion for Final Approval of Class and

Collective Action Settlement, Certification of Settlement Class, Award of Attorneys' Fees and

Reimbursement of Expenses and Service Payment to Plaintiff.  (ECF No. 23.)  For the following

reasons, Plaintiff's Motion will be granted.

## I.    BACKGROUND

Between April 2012 and July 2013, Representative Plaintiff Victoria Graudins worked as

a server at Defendants' restaurant, The Tilted Kilt Pub.  On May 5, 2014, Plaintiff filed the

instant class/collective action against Defendants, alleging various wage- and tip-related

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the Pennsylvania

Minimum Wage Act, 43 Pa. Cons. Stat. § 333.101 *et seq.* ("PMWA"), the Pennsylvania Wage

Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq.* ("PWPCL"), and common law.

(Compl., ECF No. 1.)  Specifically, the Complaint alleges:

> Defendants violated the aforementioned laws by failing to satisfy the notice
> requirements of the tip credit provisions of the FLSA and PMWA; failing to
> ensure that Tipped Employees earn the mandated minimum wage when taking
> the tip credit; and requiring Tipped Employees to use their tips to reimburse
> Tilted Kilt for cash shortages and customer walkouts . . . .

(Compl. ¶ 4.)  In addition, Plaintiff alleges that Defendants failed to pay tipped employees for all of their compensable time and required them to purchase employer-mandated uniforms, in violation of the FLSA and PMWA.  (*Id.* at ¶¶ 5-6.)  Plaintiff brought this action on behalf of herself and all tipped employees working for Defendant between March 28, 2012 and July 2, 2015.  (*Id.* at ¶¶ 13, 18.)

On June 30, 2014, Defendants filed an Answer that generally denied Plaintiff's allegations.  (ECF No. 5.)  On August 19, 2015, the parties stipulated to stay the litigation and notified the Court that they were entering mediation in an attempt to settle Plaintiff's claims.  (ECF No. 18.)  On February 12, 2016, Plaintiff notified the Court that a settlement agreement had been reached, and filed an Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, Certification of Settlement Class, Appointment of Class Counsel, Approval of Proposed Class Notice, Dismissal of Additional Defendants, and Scheduling of a Final Approval Hearing.  (ECF No. 19.)  On April 6, 2016, the Court granted the Motion.  (ECF No. 22.)  The settlement provides for a maximum gross settlement amount of $300,000 inclusive of Class Counsels' fees and costs, and claims administration fees and the service payment.

Following preliminary approval, notice and claim forms were sent to 242 putative class members.  (Devery Decl. ¶ 4, ECF No. 25-1.)  The claims administrator received a total of 82 claim forms from class members.  (*Id.* at ¶ 12.)  Only one class member requested exclusion from the class.  (*Id.* at ¶ 14.)  There were no objections to the terms of the agreement.  (*Id.*)

On June 21, 2016, Plaintiff filed the instant Motion.  Plaintiff also filed supplemental memoranda of law in support of the Motion.  (Settlement Approval Mem., ECF No. 23-1; Fees & Expenses Mem., ECF No. 23-2.)  The Motion is unopposed.  (1st Wells Decl. ¶ 159, ECF No.

24.)  On July 21, 2016, a Fairness Hearing was held with counsel for the parties present.  (ECF

No. 26.)

## II.    THE PROPOSED SETTLEMENT AGREEMENT

The terms of the Settlement Agreement are set forth in the Joint Stipulation of Settlement

and Release Agreement.  (Settlement Agreement, ECF No. 24-1.)  A summary of the Agreement

is outlined below.

The Settlement Class is defined as "Plaintiff and any Class Member who does not opt-out

within the specified period in accordance with the requirements of this Settlement Agreement.

Defendant represents and warrants that all members of the Settlement Class are Tipped

Employees."  (Settlement Agreement ¶ 2.29.)  Taking into account the individual that elected to

opt-out of the proposed settlement agreement, the Settlement Class consists of 241 individuals.

(Hr'g Tr. 3, ECF No. 27.)

Participating Settlement Class Members is defined as:

Every Member of the Settlement Class who submits a valid and timely Claim
Form in accordance with the terms of this Settlement Agreement.  In accordance
with the terms of this Settlement Agreement, only Participating Settlement Class
Members will release their FLSA claims and only Participating Settlement Class
Members will receive any money in connection with this Settlement.

(Settlement Agreement ¶ 2.20.)  Of the 241 individuals comprising the Settlement Class, 82

individuals will release their FLSA claims and receive an apportioned amount of the monetary

payment of $300,000, less fees, expenses, and claims administration costs.  (Hr'g Tr. 3-4.)

The Claims Administrator will calculate Settlement Payments for Participating

Settlement Class Members in four steps:

(1) The Claims Administrator will deduct from the Maximum Gross Settlement
Amount the following amounts as awarded or permitted by the Court: (i) Class
Counsel's attorneys' fees and expenses, (ii) the Service Payment, if any, to the

3

Plaintiff, and (iii) the fees and expenses of the Claims Administrator. The resulting number will be referred to as the Net Settlement Amount.

(2) For each Participating Settlement Class Member, the Claims Administrator will multiply the difference between the full minimum wage ($7.25) and the hourly rate actually paid by Defendant to that Participating Settlement Class Member by the number of hours worked during the Class Period by that individual (for example: $7.25 - $2.83 = $4.42 x 100 hours worked = $442.00). This number will be referred to as the Participating Individual Damage Amount.

(3) The Participating Individual Damage Amount for all Participating Settlement Class Members will then be added together by the Claims Administrator to determine the Participating Settlement Class Members' Total Damage Amount.

(4) The Net Settlement Amount will be divided by the Participating Settlement Class Members' Total Damage Amount.

(5) The resulting fractional amount will then be multiplied by a Participating Individual Damage Amount to determine that Participating Settlement Class Member's Settlement Payment.

(6) To avoid a windfall to any individual Participating Settlement Class Member, no Participating Settlement Class Member's Settlement Payment will be higher than five times that individual's Estimated Settlement Payment. Should any Participating Settlement Class Member's Settlement Payment be higher than five times his or her Estimated Settlement Payment, such amount will be reduced accordingly and with such reduction reverting to Defendant.

(Settlement Agreement ¶ 4.7(B).)

Based upon the number of Participating Settlement Class Members, the average award is expected to exceed $1,159.20, and the highest award is expected to exceed $6,392.85. (Devery Decl. ¶ 15.) Within 14 days of the Court's final approval order, final payments will be made to all Participating Settlement Class Members. (Settlement Agreement ¶ 4.12(B).) Half of the payout amount to each Participating Settlement Class Member "will be allocated to the claims asserted in the Litigation for alleged unpaid wages and other alleged wage-related damages," thus subjecting such portion to statutory withholding taxes and other required deductions. (*Id.* at ¶ 4.12(C).) The other half "will be allocated to the claims asserted in the Litigation for alleged

4

liquidated damages and other relief," qualifying such payment as "non-wage" income.  (*Id.*) Participating Settlement Class Members will receive 100% of the $300,000 less fees, expenses, and claims administration costs, unless any settlement check is not negotiated within 90 days of payment.  (*Id.* at ¶ 4.12(D); Hr'g Tr. 15.)  Any payment not cashed within the 90-day period will be returned to Defendants.  (Settlement Agreement ¶ 4.12(E).)

## III.   DISCUSSION

Plaintiff asks the Court to simultaneously certify a state law class and an FLSA collective, as well as to approve the terms of the proposed settlement agreement.  In addition, Plaintiff seeks approval of a requested service payment, as well as an award for attorneys' fees and expenses.

### A.   Class Certification under Rule 23

To certify the class, the requirements of Federal Rules of Civil Procedure 23(a) and 23(b) must be satisfied.  *Altnor v. Preferred Freezer Servs., Inc.*, No. 14-7043, 2016 WL 3878161, at *4 (E.D. Pa. July 18, 2016).  "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).  Class certification is only appropriate after a "rigorous analysis of the evidence" and resolution of all factual and legal disputes.  *Id.* (citation omitted). The prerequisites of Rule 23 must be strictly met.  *Id.*; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

#### 1.   Rule 23(a) Factors

Under Rule 23(a), Plaintiff must demonstrate:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"First, 'no minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Leap v. Yoshida*, No. 14-3650, 2016 WL 1730693, at *4 (E.D. Pa. May 2, 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

Here, the parties have confirmed that the Settlement Class consists of 241 individuals. Rule 23(a)'s numerosity requirement is satisfied, as joinder of 241 individuals would be impracticable.

Second, Plaintiff must assert a claim that shares "at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (citation omitted). The requirement that Plaintiff's claims be highly interrelated with class claims ensures "that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Here, the Class members have several questions of fact in common with the Representative Plaintiff because they were all tipped employees who allegedly (1) never received notice of Defendants' tip credit practices, (2) did not earn minimum wage when paying the tip credit, (3) paid Defendants for cash shortages, and (4) did not receive compensation for all of their working hours. The questions of law common to the Class are whether the aforementioned practices violated the PMWA and PWPCL. Because the Representative Plaintiff and class members' claims are so interrelated that the interests of the class members are fairly and

6

adequately protected, the commonality requirement is satisfied. *See Altnor*, 2016 WL 3878161, at *4 ("[C]ases involving wage claims present perhaps the most perfect questions for class treatment." (citation and internal quotation marks omitted)).

Third, the claims or defenses of the Representative Plaintiff must be "typical of the claims or defenses of the class." Fed R. Civ P. 23(a)(3). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

Here, the Representative Plaintiff challenges the conduct that Defendant allegedly applied to every other identified class member—that tipped employees were never notified of Defendants' tip credit practices, and were not compensated at a statutory minimum rate for all of their working time. The Representative Plaintiff's interests are identical to the interests of every class member. Therefore, Rule 23(a)(3)'s typicality requirement is satisfied.

Fourth and finally, the Representative Plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A representative plaintiff is adequate if (1) the representative plaintiff's counsel is competent to conduct a class action; and (2) the representative plaintiff's interests are not antagonistic to the class's interests." *Barel v. Bank of Am.*, 255 F.R.D. 393, 398 (E.D. Pa. 2009).

Class counsel, Gerald D. Wells, III and Eric Rayz have extensive experience litigating wage-related employment matters in various district courts. (*See* 1st Wells Decl. ¶¶ 95-97.) A number of courts in this district have found class counsel to be competent, experienced, and well-qualified to prosecute class actions such as this one. (*See id.* at ¶ 98.) Moreover, class counsel's firms have been involved in numerous class action lawsuits within the Eastern District.

7

(*See id.* at ¶ 98.)  In addition, there are no identifiable conflicts of interest between the Representative Plaintiff and the other class members.  On the contrary, as reflected in the discussion of the preceding factors, the Representative Plaintiff's interests in this case are almost identical to those of the other class members.  Therefore, because class counsel is qualified to conduct the litigation, and because the Representative Plaintiff's interests are not antagonistic to those of other class members, the adequacy requirement is satisfied.

### 2. *Rule 23(b) Requirements*

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Rule 23(b)(3), under which Plaintiff seeks final class certification, requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). The four factors pertinent to the superiority inquiry are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

With regard to predominance, Defendants allegedly instituted an unlawful wage system in which all tipped employees did not receive notification of Defendants' tip credit practices and were not paid the statutory minimum wage for their working hours. Therefore, all class members were harmed by Defendants' conduct, and the common questions of law or fact predominate over any questions affecting only individual members.

With regard to superiority, the individual class members are highly unlikely to have the financial resources to pursue individual actions and would go uncompensated for Defendants' alleged wrongdoing absent class certification. Even if individual class members had the resources to pursue individual claims, the costs of pursuing such claims would likely exceed any recovery. *See Barel*, 255 F.R.D. at 399-400 ("[A] class action is superior to individual lawsuits by the class members because it provides an efficient alternative to individual claims, and because individual class members are unlikely to bring individual actions given the likelihood that their litigation expenses would exceed any potential recovery.") (citation and internal quotation marks omitted). As to the extent and nature of any litigation concerning the controversy already begun by or against class members, we are not aware of any other lawsuits that have been filed against Defendants stemming from the same conduct. Next, the allegedly wrongful conduct occurred in King of Prussia, so this Court is a desirable forum for this litigation. Finally, there would be no foreseeable difficulties in managing a class action here, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Clearly, this class meets all of the requirements of Rules 23(a) and 23(b)(3). Therefore, we will certify the proposed class for the purposes of settlement approval.

**B. Collective Certification**

Having conditionally certified the FLSA collective, we now must make "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citation and internal quotation marks omitted).  In deciding whether the proposed collective members[1] are in fact similarly situated, we should consider:  "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012).

Here, the 82 individuals who opted into the FLSA collective action all worked for Defendants as tipped employees at Defendants' restaurant located in King of Prussia.  In addition, all members of the Collective advance the same claims—that they (1) never received notice of Defendants' tip credit practices, (2) did not earn minimum wage when paying the tip credit, (3) paid Defendants for cash shortages, and (4) did not receive compensation for all time worked.  Moreover, each member of the Collective is effectively being compensated "as if they were paid the full minimum wage" for their work hours during the statutory period.  (Hr'g Tr. 4.) Finally, because all Collective members were tipped employees, they had sufficiently similar salaries and circumstances of employment.  Consequently, the 82 individuals who opted into the FLSA collective action are in fact similarly situated, and the collective will be certified.

---

[1] The proposed collective members are synonymous with the Participating Settlement Class Members as defined in the settlement agreement.

**C.  Fairness of the Proposed Settlement**

*1.  Class Action Settlement*

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Final approval of a class-action settlement requires a finding by the Court that the settlement is fair, reasonable, and adequate.  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010).[2]

In *Girsh v. Jepson*, the Third Circuit articulated nine factors for district courts to consider in deciding whether a class-action settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible

---

[2] Although the Third Circuit has reasoned that "where the parties simultaneously seek certification and settlement approval," courts examining the fairness of a proposed settlement must be "even more scrupulous than usual," *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) (internal quotation marks and citation omitted), it has also instructed that a *presumption of fairness* applies where:  "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected," *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (internal quotation marks and citation omitted); *see also Altnor*, 2016 WL 3878161, at *8 n.4 (discussing the tension between a scrupulous examination and a presumption of fairness in ultimately concluding that a presumption of fairness was warranted).

Here, the parties entered into mediation before retired U.S. Magistrate Judge Diane Welsh.  (Settlement Approval Mem. 6.)  Class counsel conducted research and analysis of Plaintiffs' claims, depositions were conducted, and "thousands of pages of discovery were produced."  (Hr'g Tr. 8.)  In addition, as discussed above, class counsel is experienced in state class action and FLSA collective action litigation in similar matters.  Finally, no class members have objected to the terms of the proposed settlement agreement, and only one person has opted out.  Therefore, a presumption of fairness attaches.  We will nevertheless perform a thorough examination in assessing the fairness, reasonableness, and adequacy of the proposed settlement agreement.

recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (alterations omitted)).[3]  We must make findings regarding the *Girsh* factors where appropriate.  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).  However, we cannot "substitute the parties' assurances or conclusory statements for [our own] independent analysis of the settlement terms."  *Id.* at 350-51.

> i.   The complexity, expense, and likely duration of the litigation.

 "The first factor captures the probable costs, in both time and money, of continued litigation."  *Barel v. Bank of Am.*, 255 F.R.D. 393, 400 (E.D. Pa. 2009) (citation and internal quotation marks omitted).  As counsel made clear at the hearing, if the proposed settlement agreement is not approved by the Court, further discovery would need to be conducted, and "hard-fought" summary judgment motions would be filed.  (Hr'g Tr. 7.)  In addition, Plaintiffs

---

[3] Subsequently, the Third Circuit advised that in light of the "sea-change in the nature of class actions," it may be useful for courts to consider the following factors in addition to the *Girsh* factors:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential*, 148 F.3d at 323.  However, "[w]hile the Court must make findings as to the *Girsh* factors, the *Prudential* factors are merely illustrative of additional factors that may be useful."  *Leap*, 2016 WL 1730693, at *7.

face several obstacles in establishing liability, including a determination of how long employees actually took to don and doff uniforms, demonstrating that corrective actions taken by Defendants were not sufficient, and establishing the extent of pre-shift work actually done off-the-clock.  Such individual factual inquiries into the practices of Defendants and the numerous employees involved would certainly add a degree of complexity to the case.  "With complexity comes expense and, too often, delay."  *Leap*, 2016 WL 1730693, at *8.  Therefore, the first factor weighs in favor of the proposed settlement agreement.

ii.    The reaction of the class to the settlement.

All 242 proposed class members were mailed notice of the proposed settlement agreement at their last known address.  In addition, the claims administrator maintained a case specific website whereby proposed class members could update their address and ask case specific questions.  (Devery Decl. ¶ 5.)  Finally, notice of the settlement agreement was posted in areas of Defendants' restaurant visible to all current tipped employees.  (Hr'g Tr. 6.)  Of the 242 proposed class members, only one opted out, and no one objected to the fairness or adequacy of the proposed settlement agreement.  These facts support approval of the proposed settlement agreement.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that "only" 29 objections in 281 member class "strongly favors settlement").

iii.    The stage of the proceedings and the amount of the discovery completed.

"This factor captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had adequate appreciation of the merits of the case before negotiating."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (citation and internal quotation marks omitted).  Here, the

13

parties represent that they have engaged in extensive discovery, including thousands of pages of document production, production of payroll data, deposing Plaintiff, and deposing Defendants' corporate designee.  (Hr'g Tr. 8; Settlement Approval Mem. 15.)  Considering the amount of discovery already completed in this case, we are satisfied that class counsel adequately evaluated the merits of the claims before engaging in settlement negotiations.  This factor also weighs in favor of approving the proposed settlement.

iv.    <u>The risks of establishing liability.</u>

"These inquiries '"survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."'  *In re Ikon Office Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998).  Here, throughout settlement negotiations, Defendants maintained that employees were properly notified of tip credit procedures and were properly compensated in accordance with the law.  Moreover, Defendants provided class counsel with declarations from current employees that support these assertions.  (Hr'g Tr. 9.)  It is possible that a fact-finder could determine that Defendants made a good faith effort in notifying employees of their tip credit practices, and that any wage losses were negligible.  *See Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 555 (7th Cir. 2016) (affirming district court's grant of summary judgment in restaurant server's tip notification FLSA and class action suit in which servers spent "negligible" time performing duties for which they may not have been fully compensated).  Furthermore, should this matter proceed to trial, Defendants would likely contest class certification, arguing that the circumstances of each employees' compensation is something that must be reviewed on

14

a case-by-case basis. The results of a trial here are not certain. Accordingly, we find that this factor favors approval of the settlement agreement.

> v.   <u>The risks of establishing damages.</u>

The parties anticipate that even if the Representative Plaintiff were to successfully establish liability, determining damages would be difficult. "To go in and to determine exactly how much individual work off the clock and how long it took for [tipped employees] to don and doff the uniform would require significant expert discovery . . . as well as it would create an issue with damage models." (Hr'g Tr. 9.) Further complicating the calculation of damages is that each individual employee's time spent working off of the clock would likely vary from shift to shift. We find that this factor favors approval of the settlement agreement.

> vi.   <u>The risks of maintaining the class action through trial.</u>

There will always be a "risk" or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement. *In re Prudential*, 148 F.3d at 321. Therefore, "the manageability inquiry in settlement-only class actions may not be significant." *Id.* Nevertheless, Defendants will certainly oppose certification of the Class and could also seek to decertify the class prior to trial. This factor also weighs in favor of approval.

> vii.   <u>Defendants' inability to withstand a greater judgment.</u>

The parties submit that Defendants' ability to pay was never an issue in the settlement, and that therefore, this factor is neutral. (Hr'g Tr. 9.) Having nothing in the record establishing Defendants' ability to withstand greater judgment, we conclude that this factor neither favors nor disfavors approval of the settlement agreement.

viii.   The range of reasonableness of the settlement in light of the best possible recovery and in light of all attendant risks of litigation.

The final two *Girsh* factors "require the Court to assess 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *Altnor*, 2016 WL 3878161, at *10 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)). "[T]he ultimate test of the value of a settlement in the class context is who gets what and how much." *Id.* Here, approximately 34% of the class will receive a pro rata share of approximately 50% of the total alleged damages. (Hr'g Tr. 9-10.) Therefore, each of the 82 Participating Settlement Class Members who have opted into this proposed settlement agreement will likely be compensated in excess of their actual individual damages. Importantly, those class members who have not opted into the settlement agreement have retained their right to pursue FLSA claims and are free to pursue damages for wage-related violations at a later date.[4] As to the risks of litigation, it is not clear which party is likely to succeed at trial, let alone the amount of damages the class would receive if Representative Plaintiff prevails. This settlement provides a degree of certainty for those class members who have opted into the agreement that litigation would not. Therefore, the range of reasonableness of the settlement in the light of possible recovery and the attendant risks of litigation weighs in favor of approving the settlement agreement.

Having examined the settlement agreement in light of the *Girsh* factors, the Court finds the settlement is "fair, reasonable, and adequate." *Girsh*, 521 F.2d at 157.

---

[4] Although Plaintiff asserted several state law class action claims in her Complaint, in essence, the monetary award here is directed at the FSLA collective claim.

16

2. *Collective Action Settlement*

"When evaluating a collective action settlement of FLSA claims, district courts must determine [1.] whether the settlement is a fair and reasonable resolution of a bona fide dispute[,]" *Leap*, 2016 WL 1730693, at *9 (citations and internal quotation marks omitted), and 2. whether "the settlement furthers the FLSA's implementation in the workplace," *Altnor*, 2016 WL 3878161, at *11. "[W]hile factors for evaluating 'fairness' of a settlement in an FLSA collective action have not been definitively set out by the Third Circuit, district courts in this Circuit have utilized the *Girsh* factors for approving Rule 23 class action settlements." *Id.* (citation and internal quotation marks omitted).

As discussed in the preceding section, the *Girsh* factors favor approval of the proposed settlement agreement. In addition, as also previously discussed, Defendants have denied Plaintiff's claims throughout these early stages of litigation. *See id.* ("A proposed settlement resolves a bona fide dispute if its terms 'reflect a reasonable compromise over issues, such as back wages, that are actually in dispute.'") (citation omitted). We are satisfied that the settlement agreement is a fair and reasonable resolution of a bona fide dispute.

In addition, we find that the proposed settlement does not frustrate the implementation of the FLSA in the workplace. The proposed agreement's confidentiality provision does not seek to seal the record or prohibit Plaintiff and class members from discussing this matter with anyone, but only prohibits Plaintiff from "publicizing" the terms of this settlement agreement and making public comment to the press and media. (Settlement Agreement ¶¶ 8.16-8.17.) "Such a prohibition does not thwart the informational objective of the FLSA's notice requirement by silencing the employee who has vindicated a disputed FLSA right." *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014). The

proposed settlement agreement is publicly available to all as part of the public record, "and the limited confidentiality provision is not unduly restrictive so as to frustrate the purpose of FLSA." *Id.* To the contrary, this suit and the proposed settlement agreement have furthered the purposes of the FLSA—to inform tipped employees of their wage rights and to force employers to pay employees for time worked. As previously discussed, since this lawsuit was filed, Defendants have taken corrective action to help ensure that their tip notification procedure and minimum wage structure is in compliance with statutory law. Furthermore, class members have been notified of their rights under the FLSA, and those not opting into this collective action retain their right to bring forth any FLSA claim against Defendant Kop Kilt, LLC. Therefore, we conclude that the proposed settlement agreement furthers the FLSA's implementation in the workplace.

### D. Award to Class Representative

A $7,500 Service Payment Award for Representative Plaintiff is requested. Although $7,500 is on the higher end of awards to representative plaintiffs in cases with similar issues and similar amounts at stake, it is not unreasonable. *See, e.g.*, *Leap*, 2016 WL 1730693, at *10 (approving $5,000 service award to representative plaintiff where tip-related wage settlement fund was $225,000); *Reyes v. Altamarea Grp.*, LLC, No. 10-6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving $15,000 service award to each of three representative plaintiffs where tip-related wage settlement fund was $300,000); *deMunecas v. Bold Food, LLC*, No. 09-00440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) (approving $5,000 service award to each of the five representative plaintiffs where tip-related wage settlement fund was $800,000). Here, the Representative Plaintiff was thoroughly involved through each stage of this litigation leading to settlement—she helped her counsel to understand the intricacies of

Defendants' wage-related practices, responded to various document requests and interrogatories, sat for a deposition, and attended an all-day mediation.  (Hr'g Tr. 16-17.)  This is not the kind of case wherein a plaintiff provided minimal, "run-of-the-mill" assistance.  *See Romero v. La Revise Associates, L.L.C.*, 58 F. Supp. 3d 411, 422 (S.D.N.Y. 2014) (reducing representative plaintiff's request for $10,000 service award to $5,000 because there was no evidence that he had been deposed or attended mediation).  The Representative Plaintiff's involvement here served not only her own benefit, but also the benefit of the class.  We are satisfied that a $7,500 award is reasonable.

### E.  Attorneys' Fees and Costs

Class counsel seeks attorneys' fees in the amount of $100,000 and costs in the amount of $6.865.70.

#### 1.  *Percentage-of-recovery*

In a case such as this, where class members recover from a single common fund, the Third Circuit favors the percentage-of-recovery method in evaluating the fairness of attorneys' fees.  *In re Prudential*, 148 F.3d at 333 ("The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.") (citation and internal quotation marks omitted).  In evaluating the fairness of the requested fees utilizing this method, we must weigh the following seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Leap*, 2016 WL 1730693, at *9.  "These fee award factors need not be applied in a formulaic way and in certain cases, one factor may outweigh the rest."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).

Regarding the first factor, the Settlement Fund is $300,000, and each of the 241 class members has already received some benefit from the settlement agreement.  As previously discussed, each of the 82 Participating Settlement Class Members will likely be compensated at a rate in excess of their individual damages, and the average award to such class members is expected to be over $1,141.  (Hr'g Tr. 10.)  With regard to the remaining class members, they have received information about their rights under both federal and Pennsylvania law regarding tip notification procedures and mandatory minimum wage practices.  They have retained their rights to bring FLSA claims against Defendant Kop Kilt for any violations of those rights.  Furthermore, as a result of this settlement, those still working for Defendants have received the benefit of changes in Defendants' compensation structure and tip notification practices.  Therefore, this factor weighs in favor of approving the requested attorneys' fees.

As to the second factor, there have been no objections to the settlement terms or the fees requested.  This factor also weighs in favor of approving the requested fees.

Third, as already noted, class counsel has substantial experience in complex class action litigation, including litigation involving FLSA and other wage and hour claims.  The result that counsel has achieved here likely compensates Participating Settlement Class Members beyond their actual damages and would not have been achieved without counsel's skill and experience.  *See In re Linerboard Antitrust Litig.*, No. 98-5055, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise.").  Therefore, this factor also favors approval of the requested attorneys' fees.

Fourth, class counsel has spent in excess of 400 hours litigating this matter over the course of approximately two years.  (Hr'g Tr. 14.)  In addition, addressing the various class and FLSA claims involving Defendants' tip notification and wage procedures requires a high degree of specialized knowledge.  *See Leap*, 2016 WL 1730693, at *10 ("[T]he case is admittedly complex due to the combination of FLSA and class action claims.").  This factor weighs in favor of approving the requested fees.

Fifth, there was a risk of nonpayment here because counsel took this case on a contingent fee basis.  (Hr'g Tr. 14.)  As already noted, this case would have likely been fiercely contested, and there was a possibility that some of Plaintiff's claims may have been adversely ruled upon at the summary judgment stage.  (*See id.*)  This factor also favors approval of the requested attorneys' fees.

Sixth, class counsel spent substantial time on this case—working in excess of 400 hours. Moreover, class counsel will be responsible for continued work on this matter as it oversees the settlement agreement's administration, including the distribution of the settlement proceeds. Therefore, this factor weighs in favor of approving the requested attorneys' fees.

Regarding the seventh and final factor, the requested attorneys' fees of one third of the Settlement Fund are well within the range of fees awarded in similar cases.  *See, e.g., Altnor*, 2016 WL 3878161, at *16 ("[A] benchmark of one-third of the settlement fund is often appropriate to prevent a windfall to counsel."); *Leap*, 2016 WL 1730693, at *10 ("[F]ee awards in common fund cases within this district generally range between 19% and 45% of the fund. Consequently, the 30% requested by Class Counsel in this case is reasonable . . . .") (internal citation omitted); *Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721, at *13 (E.D. Pa. Apr. 15, 2015) (approving a fee of 35% of the common fund in a wage and hour class action

involving FLSA and Pennsylvania minimum wage claims).  This factor also weighs in favor of

awarding class counsel their requested fee.

2.  *Lodestar Multiplier Check*

"The Third Circuit has stated that it is sensible for district courts to cross-check the

percentage fee award against the lodestar method."  *Altnor*, 2016 WL 3878161, at *14 (quoting

*In re Rite Aid Corp.*, 396 F.3d at 305).

> The lodestar award is calculated by multiplying the number of hours reasonably
> worked on a client's case by a reasonable hourly billing rate for such services
> based on the given geographical area, the nature of the services provided, and the
> experience of the attorneys.  The multiplier is a device that attempts to account for
> the contingent nature or risk involved in a particular case and the quality of the
> attorneys' work.  The lodestar cross-check serves the purpose of alerting the trial
> judge that when the multiplier is too great, the court should reconsider its
> calculation under the percentage-of-recovery method, with an eye toward
> reducing the award . . . .  The district courts may rely on summaries submitted by
> the attorneys and need not review actual billing records.

*In re Rite Aid Corp.*, 396 F.3d at 305-07.

Here, class counsel represents that they have spent a total of 401.5 hours litigating this

matter.  Counsel has submitted a proposed lodestar figure of $212,846.50, which represents an

hourly rate of approximately $530 per hour.  (Fees & Expenses Mem. 12.)  When calculated

against the requested fee of $100,000, the lodestar multiplier is 0.469—representing a fee of

approximately $250 per hour.  The lodestar cross-check confirms the reasonableness of the

requested attorneys' fees.  *See Altnor*, 2016 WL 3878161, at *14 ("'A lodestar multiplier of less

than one,'" like the lodestar multiplier here, "'reveals that the fee request constitutes only a

fraction of the work that the attorneys billed' and thus favors approval.") (quoting *Carroll v.

Stettler*, No. 10-2262, 2011 WL 5008361, at *8 (E.D. Pa. Oct. 19, 2011)).

We are satisfied with the reasonableness of the requested fee and we will approve class counsels' request for $100,000 in attorneys' fees.  In addition, class counsel is entitled to be reimbursed for their litigation-related expenses in the amount of $6,865.70, the bulk of which is associated with mediation and deposition-related fees.  (*See* 1st Wells Decl. ¶ 144.)

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Final Approval of Class and Collective Action Settlement, Certification of Settlement Class, Award of Attorneys' Fees and Reimbursement of Expenses and Service Payment to Plaintiff will be granted.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK,   J.**

23